IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TOMICA BRADLEY,                        )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )    CIVIL ACTION 09-0222-WS-B
                                       )
MOBILE COUNTY PUBLIC SCHOOL            )
SYSTEM, et al.,                        )
                                       )
    Defendants.                        )

**ORDER**

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 28). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 29, 35, 36),[1] and the motion is ripe for resolution. After

---

[1] Actually, the plaintiff has filed no evidence. She cited a number of deposition pages, and one exhibit, in her brief in opposition, but she filed none of these materials. The Court pointed out the failure and ordered her to correct it, (Doc. 37), but she did not do so. Instead, she delivered a hard copy of the materials to the Court, in compliance with the Court's standing order requiring a courtesy hard copy of exhibits exceeding 50 pages. (Doc. 11 at 5).

The grant or denial of summary judgment is to be based on the material "on file." Fed. R. Civ. P. 56(c)(2). Material delivered to a judge rather than to the clerk is not "filed" unless the judge "agrees to accept it for filing." *Id.* Rule 5(d)(2)(B). The Court did not agree to accept the plaintiff's courtesy copies for filing; on the contrary, the Court explicitly instructed the plaintiff "to file and serve her exhibits" and to also "deliver a courtesy hard copy to chambers." (Doc. 37). The courtesy copies (to the extent not redundant with the defendants' filed submission) are thus not part of the record and cannot form the basis of a denial of summary judgment. *See Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 278 n.4 (S.D. Ala. 2006) ("Extraneous material set forth in the courtesy copy is not part of the record and will not be reviewed or relied on in any way herein."); *accord United States v. Miller*, 395 F. Supp. 2d 875, 877 n.2 (D.N.D. 2005).

The plaintiff's lapse is not outcome-determinative. The Court has reviewed the pages delivered to chambers, and they do not alter the Court's ruling on the merits of the defendants' motion.

carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, the plaintiff was employed by the defendant Mobile County Public School System ("the System"). She is African-American. The plaintiff served as principal of Fonveille Elementary School for the two school years 2006-2008. Prior to the end of the second school year, she received notice of the non-renewal of her contract. A white female succeeded her as principal at Fonveille.

The plaintiff later applied for a position as principal at E.R. Dickson Elementary School. She was not considered for the position, which was filled by a white female.

The complaint alleges that both employment decisions were unlawfully based on her race, in violation of Title VII, Section 1981, and the Equal Protection Clause (vindicated under Section 1983). (Doc. 1 at 3-4, Counts A-C). The complaint also alleges that the plaintiff was deprived of a property or liberty interest without due process in connection with the Fonveille position. (*Id*. at 4, Counts C-D). The defendants are the System and the Board of School Commissioners ("the Board").

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any,

showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those legal arguments the parties have expressly advanced.

The plaintiff concedes that her Title VII claim with respect to the Fonveille position is time-barred and due to be dismissed. (Doc. 35 at 1). She also concedes that her due process claim is due to be dismissed. (*Id.*). Finally, she concedes that her Section 1981 claims are not viable against these state-actor defendants. (*Id.*).[2] Left for consideration are her Section 1983 equal protection claim with respect to the Fonveille position and her Title VII and Section 1983 claim with respect to the Dickson position.

"Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts." *Rioux v. City of Atlanta*, 520 F.2d 1269, 1275 n.5 (11th Cir. 2008). The parallel claims are thus "analyzed under the same framework." *Underwood v. Perry County Commission*, 431 F.3d 788, 793 (11th Cir. 2005); *accord Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001) ("[C]laims under

---

[2] "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 198 violations must be brought pursuant to § 1983." *Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1337 (11th Cir. 2008).

§ 1983 and Title VII generally have the same elements of proof and use the same analytical framework ….").  The Court thus applies the Title VII framework to the Section 1983 claims.

In Title VII cases, the burden is first on the plaintiff to establish a prima facie case. If she succeeds, the employer must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's proffered reasons are a mere pretext for illegal discrimination. *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002).

The defendant's burden is usually described as one of articulating a reason "for the adverse employment action." *E.g., Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). To meet its burden, the defendant must articulate a reason "legally sufficient" to justify judgment in its favor and must support the articulated reason "through the introduction of admissible evidence." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994). Rather, the defendant "must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998).

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford*, 529 F.3d at 976 (internal quotes omitted). "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012,

[4]

1037 (11th Cir. 2000) (en banc) (emphasis added). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux*, 520 F.3d at 1279; *accord Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

### I. Non-Renewal.

The defendants do not dispute the plaintiff's ability to establish a prima facie case. (Doc. 29 at 10). They articulate as their legitimate, non-discriminatory reason for not renewing her contract that "she had not demonstrated an overall ability to effectively manage her school." (*Id*. at 10-11). This is a legally sufficient reason for the decision, and there is record evidence that the defendants relied on that reason. (Doc. 29, Exhibit 1 at 1-2, ¶ 2). The plaintiff does not argue that the defendants have not met their intermediate burden. (Doc. 35 at 2).

The plaintiff cites the following as evidence of pretext: (1) Phaedra Fox and Martha Peek disagreed on who recommended her non-renewal to the superintendent; (2) Fox and Peek failed to mention "ineffective management" in their depositions as a reason for the plaintiff's non-renewal, instead focusing on communication issues; (3) the plaintiff's score on communication from her first year to her second declined by only one point, which could not have been significant; (4) other principals with lower communication scores have been renewed; (5) the evaluation reflecting the plaintiff's lowered score on communication is dated after she was non-renewed; (6) Fox admits that

she had no problems with the plaintiff; and (7) Fox downplayed the significance of the plaintiff's banning of a parent from school.  (Doc. 35 at 3-9).

Most of the plaintiff's arguments depend on evidence which, as discussed in note 1, she did not file and which therefore cannot support denial of summary judgment.  Her arguments would not suffice to avoid summary judgment even had they been supported by record evidence.  The Court addresses them in sequence.

As for the plaintiff's first point, Fox, as assistant superintendent, was the plaintiff's immediate supervisor.  Fox observed the plaintiff throughout the school year and reported to deputy superintendent Peek about her, including in February 2008 when renewal/non-renewal decisions were being made.  Fox says she made no recommendation but simply reported factually, while Peek says she and Fox jointly recommended non-renewal to the superintendent.  The plaintiff does not explain the significance of this divergence, and none is apparent.  She points to no evidence that Fox (who is black) actually opposed non-renewal, such that Peek (who is white) favored it over Fox's objection.  The only question presented by the plaintiff's evidence is whether a black employee who agreed with non-renewal formally recommended that action to Peek or merely presented to Peek all the reasons that would support such a recommendation.  Nothing in this technical distinction suggests Peek acted from discriminatory motives.

As for the plaintiff's second point, she assumes that an inability to manage effectively is mutually exclusive with an inability to communicate effectively.  This is not at all obvious, since communication is a critical component of effective management, and the plaintiff does not identify any evidence that Peek, Fox or anyone else disagrees with that proposition or thought the plaintiff an ineffective communicator but an effective manager.  There is thus no suspicious tension between a perception of poor communication and of poor management.

As for the plaintiff's third point, the decline in the plaintiff's score on communication was not marginal.  In her first year, she scored a three on a four-point scale, which reflects satisfactory performance; in her second, she scored a two, which reflects unsatisfactory but remediable performance.  A decline from satisfactory to

unsatisfactory is patently significant. The plaintiff attempts to dilute the impact of her unsatisfactory score in communication by noting that her overall score on the 13-category evaluation fell only by that one point, from 39 to 38. The unsatisfactory score in communication, however, remains.

As for the plaintiff's fourth point, she has only an unamplified statement that teachers have on occasion been renewed with a score of one in communication when their other 12 scores were sufficiently high. But she has no evidence that 38 would be a sufficiently high overall score to offset a low communication score.

As for the plaintiff's fifth point, the written evaluation reflecting her unsatisfactory communication score was finalized after she was notified of her non-renewal, but the information that went into her score existed and was known to both Fox and Peek at the time of their discussions concerning renewal of the plaintiff's contract. That it had not been reduced to a formal writing does nothing to suggest pretext.

As for the plaintiff's sixth point, what Fox said was that she had no *personal* problems with the plaintiff, such as the plaintiff parking in her spot. Fox was very clear that the plaintiff had performance problems.

As for the plaintiff's seventh point, while Fox believed the plaintiff to be "in her right" in banning a particular parent from campus, she plainly did not express approval of the plaintiff's conduct in filing a criminal complaint against the parent or in banning other parents from campus. At any rate, the plaintiff does not explain how any proper conduct by her in banning a parent from campus on one occasion suggests the defendants non-renewed her based on her race rather than because they believed she had communication/management deficiencies.

The plaintiff's arguments do not demonstrate weaknesses or implausibilities in the defendants' articulated legitimate, non-discriminatory reason for their decision to non-renew her contract sufficient to permit a rational jury to conclude that the defendants did not non-renew her contract because they perceived her as an ineffective manager and instead non-renewed her contract because she is black. She has thus failed to create a

genuine issue of material fact as to pretext, and the defendants are entitled to summary judgment.

## II. Non-Hire.

The defendants concede the plaintiff can establish a prima facie case. (Doc. 36 at 6). The inquiry thus turns to the defendants' legitimate, non-discriminatory reason for the employment decision. Their problem is that they neither identify such a reason or point to record evidence that this reason motivated their decision.

The defendants concede that the plaintiff's application was forwarded by the human resources department to the System's three assistant superintendents, who decided which applicants would be interviewed. They did not select the plaintiff for interview. (Doc. 29 at 3, 14, 15). The defendants concede that none of the assistant superintendents can recall any discussion about whether to interview the plaintiff, (Doc. 36 at 8), and the defendants offer no evidence of what motivated any – much less all – of the three assistant superintendents not to select the plaintiff for interview. The defendants have not articulated how they can meet their intermediate burden when the decision-makers cannot say why they made their decision.

The defendants note that the human resources department usually receives over 200 applications for a principal position, and they suggest that the plaintiff was thus in good company in not receiving an interview. (Doc. 29 at 15). They also indicate that the non-renewal of her contract at Fonveille could not have helped her chances of obtaining an interview for the Dickson position. (*Id*. at 15-16). *Speculation* in *brief* about what *could have* motivated the decision-makers is no substitute for the legally required *evidence* in the *record* of what *actually* motivated them. "The defendant cannot testify in abstract terms as to what might have motivated the decision-maker; it must present specific evidence regarding the decision-maker's actual motivations with regard to each challenged employment decision." *Walker v. Mortham*, 158 F.3d at 1181 n.8. "Likewise, a court may not assume, based on its own perusal of the record, that the decision-maker in a particular case was motivated by a legitimate reason when the

defendant has offered none." *Id*. Because the defendants have not satisfied their intermediate burden, no burden of showing evidence of pretext passed to the plaintiff, and the defendants are not entitled to summary judgment.[3]

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment with respect to the plaintiff's claims concerning the non-renewal of her contract at Fonveille is **granted**. The defendants' motion for summary judgment with respect to the plaintiff's non-hire at Dickson is **granted** as to her Section 1981 claim and **denied** as to her Title VII and Section 1983 claims of race discrimination.

DONE and ORDERED this 13th day of September, 2010.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[3] In support of their motion for summary judgment as to the non-renewal of the plaintiff's contract at Fonveille, the defendants argue that Section 1983 liability depends on the existence of an official policy or custom of the Board. (Doc. 29 at 10). They do not rely on this argument with respect to the non-hire at Dickson, (*id*. at 14-16; Doc. 36 at 4-9), and it is therefore not in play. Nor is it clear it would succeed if it were; it certainly would not affect liability under Title VII.